UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

- - - - - - - - - - - - -

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | No. 1:24-cr-47 |
| v. | |
| RALSTON LEWIS, | Hon. ROBERT J. JONKER |
| Defendant. | U.S. District Judge |
| _____/ | |

PLEA AGREEMENT

This constitutes the plea agreement between RALSTON LEWIS and the United States Attorney's Office for the Western District of Michigan. The terms of the agreement are as follows:

1. <u>Defendant Agrees to Plead Guilty to Information</u>.  Defendant gives up the right to Indictment by a grand jury and agrees to plead guilty to the Felony Information, charging him with wire fraud, in violation of Title 18, United States Code, Section 1343; and money laundering, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

2. <u>Defendant Understands the Crimes</u>.  In order for Defendant to be guilty of violating Title 18, United States Code, Section 1343, the following must be true:

- First, that Defendant devised a scheme to defraud in order to deprive another of money or property, that is, by submitting false and fraudulent PPP loan applications to Chase and Huntington National Bank, both of which contained false claims as to the number of employees and payroll expenses of Defendant's companies, and then used the subsequent loan proceeds for his own personal benefit;

- Second, that the scheme included a material misrepresentation or concealment of a material fact;

- Third, that the defendant had the intent to defraud; and

- Fourth, that the defendant used a wire communication in interstate commerce in furtherance of the scheme.

In order for Defendant to be guilty of violating Title 18, United States Code, Section 1956(a)(1)(B)(i), the following must be true:

- First, that the defendant conducted a financial transaction;

- Second, that the financial transaction involved property that represented the proceeds of wire fraud;

- Third, that the defendant knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity; and

- Fourth, that the defendant knew that the transaction was designed in whole or in part to conceal or disguise the nature, location, source, ownership, control, of the proceeds of the crime of wire fraud.

Defendant is pleading guilty because Defendant is guilty of the charges described above.

3. <u>Defendant Understands the Penalties</u>. The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1343, is the following: 20 years of imprisonment; a 3-year period of supervised release; a fine of $250,000 or twice the gross gain or loss, whichever is greater; and a mandatory special assessment of $100.

The statutory maximum sentence that the Court can impose for a violation of Title 18, United States Code, Section 1956(a)(1)(B)(i) is the following: 20 years of imprisonment; a 3-year period of supervised release; a fine of $500,000, or twice the

value of the property or funds involved in the transaction, whichever is greater; and a mandatory special assessment of $100.

4. <u>Assessments, Restitution, Other Criminal Monetary Penalties, and Financial Cooperation</u>.

    a. <u>Assessment</u>. Defendant agrees to pay the special assessments on the day of sentencing.

    b. <u>Restitution</u>. Defendant acknowledges the Court will order restitution as required by law. Defendant agrees to pay restitution for losses to all victims, including victims of the counts of conviction and uncharged relevant conduct. The parties currently believe that the applicable amount of restitution is approximately $344,100 and recognize and agree that this amount could change based on facts that come to the attention of the parties prior to sentencing. The Court will determine the final amount at sentencing. Defendant agrees to pay restitution to the fullest extent possible at or before the time of sentencing by submitting funds to the Clerk of Court.

    c. <u>Financial Cooperation</u>. Defendant also:

    i. agrees to fully and truthfully complete and return the financial disclosure form the U.S. Attorney's Office provides, including any waivers, consents, or releases requested to access records to verify the financial information within 30 days of the date of this plea agreement;

    ii. agrees that any restitution or other criminal monetary penalties imposed by the Court shall be due and payable immediately, any payment plan set

by the Court represents a minimum payment obligation, and the United States may immediately enforce the judgment in full; and

        iii. agrees that prior to sentencing and until criminal monetary penalties are paid in full, he will not sell or give away any asset worth $5,000 or more, including the inventory or assets from his businesses, without first notifying the U.S. Attorney's Office. Defendant also agrees to notify the U.S. Attorney's Office of any proceeding, such as foreclosure, divorce, or bankruptcy that may impact Defendant's financial condition.

    5.    <u>Removal from the United States</u>.  Defendant understands that the convictions in this case may subject Defendant to removal from the United States, revocation of naturalized citizenship, denial of citizenship, and/or denial of admission to the United States in the future.

    6.    <u>Supervised Release Defined</u>.  Supervised release is a period of time following imprisonment during which Defendant will be subject to various restrictions and requirements. Defendant understands that if he violates one or more of the conditions of any supervised release imposed, he may be returned to prison for all or part of the term of supervised release, which could result in the Defendant serving a total term of imprisonment greater than the statutory maximum stated above.

    7.    <u>Asset Forfeiture and Financial Accountability</u>. Defendant agrees to disclose to law enforcement officials the whereabouts of, the Defendant's ownership interest in, and all other information known to Defendant about, all assets, money or

property of any kind, derived from or acquired as a result of, or used to facilitate the commission of Defendant's illegal activities. Defendant agrees to assist and cooperate in the recovery of all monies, property, or assets derived from, or acquired as a result of the offense charged in Counts 1 and 2 of the Information. Defendant further agrees to forfeit all rights, title, and interest in and to such items.

      a.    <u>Wire Fraud Proceeds and Property Involved in Money Laundering</u>. Defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), regarding any real or personal property used or intended to be used to commit, to facilitate, or to promote the commission of the offense charged in Count 1, and constituting, derived from, or traceable to the gross proceeds obtained directly or indirectly as a result of the offense. Defendant agrees to fully cooperate with the federal government in the seizure and forfeiture of assets pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), regarding any property, real or personal, involved in the money laundering offense, and any property traceable to such property.

      b.    <u>Money Judgment</u>. Defendant agrees to forfeit to the United States the sum of $344,100, which represents the proceeds Defendant obtained as a result of his commission of the offense charged in Count 1, and the property involved in the commission of the offense charged in Count 2.

c. <u>Substitute Assets</u>. Defendant consents to the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p). Defendant acknowledges that the proceeds he obtained directly or indirectly from his commission of the offense charged in Count 1, and the property involved in the commission of the offense charged in Count 2, are not available for seizure and forfeiture. As such, Defendant agrees that his criminal proceeds and property involved in the offense cannot be located upon the exercise of due diligence; have been transferred or sold to, or deposited with, a third party; and/or have been commingled with other property that cannot be divided without difficulty.

The parties further agree that Defendant should receive credit against the forfeiture money judgment sought by the United States for all funds Defendant pays as restitution with the Clerk of the Court prior to the time of sentencing. Accordingly, for all funds the Defendant deposits with the Clerk of the Court as restitution prior to sentencing, the Government will move for a commensurate reduction in Defendant's forfeiture money judgment.

Defendant agrees not to make any double jeopardy challenge to any administrative or civil forfeiture actions arising out of the course of conduct that provides the factual basis for the Information. Defendant further agrees not to make any double jeopardy challenge to the charges in the Information or to the imposition of a sentence for the offenses covered by this plea agreement, based upon any pending or completed administrative or civil forfeiture actions. Defendant further agrees that

forfeiture of assets described above shall not be counted toward satisfaction of any special assessment, fine, restitution, or any other penalty the Court may impose.

      8.     <u>Factual Basis of Guilt</u>.  Defendant and the U.S. Attorney's Office agree and stipulate to the following statement of facts which need not be proven at the time of the plea or sentencing:

On or about April 25, 2020, the Defendant, as the authorized representative of Blue Nyle Direct LLC, knowingly transmitted or caused to be transmitted by means of wire communications in interstate commerce to Chase Bank a Paycheck Protection Program (PPP) loan application fraudulently claiming that Blue Nyle Direct LLC had 12 employees and an average monthly payroll of $98,000. The PPP loan application, which was transmitted from within the Western District of Michigan to Chase Bank's headquarters in New York, New York, sought approximately $245,000 in PPP loan funds. Defendant knew that his loan application was false and fraudulent when it was submitted.

In support of the PPP loan application to Chase Bank, the Defendant submitted or caused to be submitted false and fraudulent IRS Forms 941, which purported to document Blue Nyle Direct LLC's employees and payroll expenses for the year 2019. In 2019, Blue Nyle Direct LLC did not have the employees or payroll expenses listed on the forms. Defendant knew that the IRS Forms 941 were false and fraudulent when they were submitted.

On or about April 30, 2020, the Defendant, as the authorized representative of Toworda, Inc., knowingly transmitted or caused to be transmitted by means of wire

communications in interstate commerce to Huntington National Bank a PPP loan application fraudulently claiming that Toworda, Inc. had 11 employees and an average monthly payroll of $78,000. The PPP loan application, which was submitted electronically from Grand Rapids, Michigan to Huntington's headquarters in Columbus, Ohio, sought approximately $195,000 in PPP loan funds. Defendant knew that his loan application was false and fraudulent when it was submitted.

In support of the PPP loan application to Huntington National Bank, the Defendant submitted or caused to be submitted false and fraudulent IRS Forms 941, which purported to document Toworda, Inc.'s employees and payroll expenses for the year 2019. In 2019, Toworda, Inc. did not have the employees or payroll expenses listed on the forms. Defendant knew that the IRS Forms 941 were false and fraudulent when they were submitted.

As a result of the Defendant knowingly submitting or causing to be submitted a false and fraudulent PPP loan application on behalf of Blue Nyle Direct LLC, on or about May 1, 2020, $245,000 in PPP loan funds were deposited into one of the business's bank accounts.

As a result of the Defendant knowingly submitting or causing to be submitted a false and fraudulent PPP loan application on behalf of Toworda, Inc., on or about May 1, 2020, $99,100 in PPP loan funds were deposited into one of the business's bank accounts.

Once Defendant received the PPP funds, which he knew were proceeds of unlawful activity, he began moving those funds between numerous bank accounts

controlled by him or one of his companies by conducting financial transactions at United States financial institutions knowing those transactions were designed in whole or in part to conceal or disguise the nature, location, source, ownership or control of the funds. He also commingled the PPP funds with other funds to help conceal the nature, location, source, ownership, or control of the PPP funds. Ultimately, Defendant used much of the PPP funds to pay for personal expenses rather than paying employees as required by the PPP.

9. <u>Acceptance of Responsibility</u>. The U.S. Attorney's Office agrees not to oppose Defendant's request for a two-level reduction of his offense level for acceptance of responsibility under Section 3E1.1(a) of the Sentencing Guidelines. However, the U.S. Attorney's Office reserves the right to object to Defendant's request if it subsequently learns of conduct by Defendant that is inconsistent with the criteria set forth in the Commentary to Section 3E1.1. Should the Court grant a two-level reduction as provided herein, the Government will move the Court to grant an additional one-level reduction if the adjusted offense level is 16 or greater pursuant to Section 3E1.1(b).

10. <u>Non-Prosecution Agreement</u>. The U.S. Attorney's Office for the Western District of Michigan agrees, except for crimes of violence and/or criminal tax violations (including conspiracy to commit such violations chargeable under 18 U.S.C. § 371), not to further prosecute Defendant for violations arising out of the investigation that led to the charges in this case. Defendant understands that the

U.S. Attorney's Office is free to prosecute Defendant for any other unlawful past conduct or any unlawful conduct that occurs after the date of this agreement.

11. <u>Prison Placement</u>.  The U.S. Attorney's Office will not object to a request by Defendant that the Court recommend that Defendant be confined at any particular institution. Both parties acknowledge that the Bureau of Prisons, in its sole discretion, decides prison placement and that, while the Bureau often gives deference to a Court's recommendation, the Bureau is not required to follow the Court's recommendation.

12. <u>The Sentencing Guidelines</u>.  Defendant understands that, although the United States Sentencing Guidelines (the "Guidelines") are not mandatory, the Court must consult the Guidelines and take them into account when sentencing Defendant. Defendant understands that the Court, with the aid of the presentence report, will determine the facts and calculations relevant to sentencing.  Defendant understands that Defendant and Defendant's attorney will have the opportunity to review the presentence report and to make objections, suggestions, and recommendations concerning the calculation of the Guideline range and the sentence to be imposed. Defendant further understands that the Court shall make the final determination of the Guideline range that applies in this case, and may impose a sentence within, above, or below the Guideline range, subject to the statutory maximum penalties described elsewhere in this Agreement. Defendant further understands that disagreement with the Guideline range or sentence shall not constitute a basis for withdrawal of the plea.

13. <u>There is No Agreement About the Final Sentencing Guidelines Range</u>. Defendant and the U.S. Attorney's Office have no agreement as to the applicable Sentencing Guidelines factors or the appropriate Guideline range. Both parties reserve the right to seek any sentence within the statutory maximum, and to argue for any criminal history category and score, offense level, specific offense characteristics, adjustments, and departures.

14. <u>Waiver of Constitutional Rights</u>.  By pleading guilty, Defendant gives up the right to persist in a plea of not guilty and the right to a speedy and public trial by jury or by the Court. As a result of Defendant's guilty pleas, there will be no trial. At any trial, whether by jury or by the Court, Defendant would have had the following rights:

    a. The right to the assistance of counsel, including, if Defendant could not afford an attorney, the right to have the Court appoint an attorney to represent Defendant.

    b. The right to be presumed innocent and to have the burden of proof placed on the Government to prove Defendant guilty beyond a reasonable doubt.

    c. The right to confront and cross-examine witnesses against Defendant.

    d. The right, if Defendant wished, to testify on Defendant's own behalf and present evidence in opposition to the charges, including the right to call witnesses and to subpoena those witnesses to testify.

e. The right not to be compelled to testify, and, if Defendant chose not to testify or present evidence, to have that choice not be used against Defendant.

f. By pleading guilty, Defendant also gives up any and all rights to pursue in this Court or on appeal any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

15. Waiver of Other Rights.

a. Waiver. In exchange for the promises made by the government in entering this plea agreement, including the agreement not to pursue additional criminal charges as part of the investigation that led to this agreement, Defendant waives all rights to appeal or collaterally attack Defendant's conviction, sentence, or any other matter relating to this prosecution, except as listed below.

b. Exceptions. Defendant may appeal or seek collateral relief to raise a claim, if otherwise permitted by law in such a proceeding, on the following grounds:

i. Defendant's sentence on any count of conviction exceeded the statutory maximum for that count;

ii. Defendant's sentence was based on an unconstitutional factor, such as race, religion, national origin, or gender;

iii. the district court incorrectly determined the Sentencing Guidelines range, if Defendant objected at sentencing on that basis;

    iv.  Defendant's sentence is above the Sentencing Guidelines range as determined by the court at sentencing and is unreasonable;

    v.  the guilty plea was involuntary or unknowing;

    vi.  an attorney who represented Defendant during the course of this criminal case provided ineffective assistance of counsel.

  If Defendant appeals or seeks collateral relief, Defendant may not present any issue in the proceeding other than those described in this subparagraph.

  16.  <u>FOIA Requests.</u>  Defendant hereby waives all rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including without limitation any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

  17.  <u>The Court is not a Party to this Agreement</u>.  Defendant understands that the Court is not a party to this agreement and is under no obligation to accept any recommendation by the U.S. Attorney's Office or the parties regarding the sentence to be imposed. Defendant further understands that, even if the Court ignores such a recommendation or imposes any sentence up to the maximum established by statute, Defendant cannot, for that reason, withdraw his guilty pleas, and he will remain bound to fulfill all of his obligations under this agreement. Defendant understands that no one—not the prosecutor, Defendant's attorney, or the Court—can make a binding prediction or promise regarding the sentence Defendant will receive, except that it will be within the statutory maximum.

18. <u>This Agreement is Limited to the Parties</u>.  This agreement is limited to the U.S. Attorney's Office for the Western District of Michigan, and cannot bind any other federal, state or local prosecuting, administrative or regulatory authority. This agreement applies only to crimes committed by Defendant. This agreement does not apply to or preclude any past, present, or future forfeiture or civil actions.

19. <u>Consequences of Breach</u>.  If Defendant breaches any provision of this agreement, including any promise of cooperation, whether before or after sentencing, the United States shall have the right to terminate this agreement, or deny any or all benefits to which Defendant would otherwise be entitled under the terms of this agreement.  In the event that the United States elects to terminate this agreement, the agreement shall be considered null and void, and the parties shall return to the same position they were in prior to the execution of this agreement, as though no agreement ever existed. In such an event, Defendant shall remain liable for prosecution on all original charges, and the United States shall be free to bring such additional charges as the law and facts warrant. Defendant further agrees to waive and forever give up his right to raise any claim that such a prosecution is time-barred if the prosecution is brought within one (1) year of the breach that gives rise to the termination of this agreement.

20. <u>This is the Complete Agreement</u>.  This agreement has been entered into by both sides freely, knowingly, and voluntarily, and it incorporates the complete understanding between the parties.  No other promises have been made, nor may any

additional agreements, understandings or conditions be entered into unless in a writing signed by all parties or on the record in open court.

21. **Deadline for Acceptance of Agreement.** If a copy of this agreement, executed by Defendant and defense counsel, is not returned to the U.S. Attorney's Office by **3/29/2024**, this agreement will be withdrawn automatically and will thereafter have no legal effect or force, unless the U.S. Attorney's Office, in its sole discretion, chooses to accept an executed agreement after that date.

MARK A. TOTTEN
United States Attorney

March 29, 2024
_____
Date

_____
STEPHANIE M. CAROWAN
Assistant United States Attorney

I have read this agreement and carefully discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. My attorney has advised me of my rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. No promises or inducements have been made to me other than those contained in this agreement. No one has threatened or forced me in any way to enter into this agreement. Finally, I am satisfied with the representation of my attorney in this matter.

3/28/2024
_____
Date

_____
RALSTON LEWIS
Defendant

I am RALSTON LEWIS' attorney. I have carefully discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible defenses, of the sentencing provisions, and of the consequences of entering into this agreement. To my knowledge, my client's decision to enter into this agreement is an informed and voluntary one.

3/28/2024
_____
Date

_____
JAMES FISHER
Attorney for Defendant